# Exhibit A

Nicholas Dagher, Esq. (SBN 275776)
**DAGHER LAW**
147 Waverly Drive
Pasadena, CA 91105
T: (626) 415-4422
Email: dagher@nd-lawyers.com; sam@nd-lawyers.com

Robert Simon, Esq.  (SBN 238095)
Brad M. Simon, Esq. (SBN 244369)
*TeamIE@JusticeTeam.com*
**THE SIMON LAW GROUP, LLP**
34 Hermosa Avenue
Hermosa Beach, CA 90254
T: (855) 910-1344

Attorneys for Plaintiff
JANE T.C. DOE

**ELECTRONICALLY FILED**
Superior Court of California
County of Sacramento
02/06/2025
By: _____P. Russell_____ Deputy

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SACRAMENTO

| | |
|---|---|
| JANE T.C. DOE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>G6 Hospitality, LLC; Motel 6, Inc. d/b/a Motel 6 Dallas, Tx– Market Center; Hilton Worldwide; Hilton Domestic Operating Company, Inc.; Hilton Dallas Lincon Centre; and DOES 1 through 200, inclusive<br><br>Defendants. | Case No.:  25CV003059<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.  18 U.S.C. §1595<br><br>2.  California Civil Code §52.5<br><br><br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**PREAMBLE**

1. "Underneath the armor of skin/and/bone/and/mind most of our colors are amazingly the same." - Aberjhani, "Elemental: The Power of Illuminated Love"

2. "Only when it is dark enough can you see the stars." - Martin Luther King Jr., illustrating the revelation of hope and guidance in times of darkness.

3. "There is a certain enthusiasm in liberty, that makes human nature rise above itself, in acts of bravery and heroism." - Alexander Hamilton

4. "Not everything that is faced can be changed, but nothing can be changed until it is faced." - James Baldwin

5. "We must accept finite disappointment, but never lose infinite hope." - Martin Luther King Jr.

6. "So powerful is the light of unity that it can illuminate the whole earth." - Bahá'u'lláh, suggesting the transformative power of collective action towards justice.

7. "The true measure of our character is how we treat the poor, the disfavored, the accused, the incarcerated, and the condemned." - Bryan Stevenson

8. "We have a moral obligation to resist the injustices done by our own government, in our own names. Not in some overheated, metaphorical, symbolic way but literally: to find out what crimes are being committed and then to refuse to be part of them." - Adrienne Rich

9. "If you want to see the true measure of a man, watch how he treats his inferiors, not his equals." - J.K. Rowling

10. "Every moment is a fresh beginning." - T.S. Eliot, reminding us that the pursuit of justice offers endless opportunities for renewal and hope.

11 "Injustice anywhere is a threat to justice everywhere." - Martin Luther King Jr., "Letter from Birmingham Jail"

12. "The only thing necessary for the triumph of evil is for good men to do nothing." - Edmund Burke"

13. "Hope is a thing with feathers that perches in the soul." - Emily Dickinson

14. "To deny people their human rights is to challenge their very humanity." - Nelson Mandela

15. "Freedom is never voluntarily given by the oppressor; it must be demanded by the oppressed." - Martin Luther King Jr., "Letter from Birmingham Jail"

**COMPLAINT AND DEMAND FOR JURY TRIAL**

## INTRODUCTION

1.      Sex trafficking has been a major issue all over and throughout the United States in the past few decades and has only gotten worse in recent years.

2.      For years, sex trafficking ventures have openly and without care, operated online, as well as, in and out of hotels all throughout the country. How is this possible? It is possible because the hotels are aware and participating in these ventures either indirectly or directly.

3. Despite major hotel brands making public claims that they are combatting human trafficking, the frequency and intensity of sex trafficking has grown rampant. Public appearances, statements and sponsorships to "combat" sex trafficking does not excuse the corporations and individuals that have benefited from sex trafficking.

4.      Major hotels may have claims that they are fighting sex trafficking, however they are not actually upholding their actions where and when it counts. Adding a blurb on their website is not enough, especially when there are still individuals being forced against their will to perform despicable acts, all underneath the roof of their own establishment, often times while staff members are aware and making it easier for the traffickers to operate and continue their criminal activity.

5.      What these major hotel corporations are not posting on their websites or in public statements is how much they are financially benefitting from the continuous and ever-growing human trafficking. They knowingly and willingly harbor criminals that plan, operate and run sex trafficking operations throughout their hotel chains.  Because it is *lucrative* for them. They make much more money supporting and helping the traffickers as opposed to protecting and defending the innocent victims. That would leave them with empty rooms and therefore empty pockets.

6.      As the trafficking industry grows, so does Defendants and their profits through the expansion of their properties, number and consistency of rooms rented, sale of survivors within or on their provided internet services and more.

7.      Plaintiff, Jane T.C. Doe ("T.C.") is a survivor of sex trafficking. She brings this action for damages pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, against Defendants for perpetrator liability and for benefiting from direct and

indirect participation in the ventures that violated 18 U.S.C. §1595 *i.e.*, [FACTS – ie renting rooms that they knew or should have known were used to harbor T.C. for the purpose of sex trafficking, and providing Wi-Fi internet services to Plaintiff's trafficker that were used to place advertisements to solicit customers that T.C. was then forced to engage in commercial sex with individuals against her will].

2.      18 U.S.C. § 1595 creates civil liability for two categories of defendants: (1) those who have themselves committed a criminal offense under § 1591 of the TVPRA ("perpetrator liability"), and (2) those who are not themselves subject to criminal liability but who knowingly benefitted from participation in a venture that they knew or should have known was committing an offense under § 1591 of the TVPRA ("beneficiary liability").

3.      Civil perpetrator liability extends to a defendant who knowingly recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person with knowledge that means of force, threats of force, fraud, or coercion, or any combination of such, will be used to cause the person to engage in a commercial sex act. 18 U.S.C. § 1591.

4.      Beneficiary liability under 1595 extends to a defendant who (1) knowingly benefitted (2) "from participation in a venture" (3) that it "knew or should have known has engaged in" trafficking of the Plaintiff. 18 U.S.C. § 1595(a).

5.      Most sex trafficking in the United States of America occurs within the hospitality industry at hotels and motels.

6.      All of the named Defendants knew that their properties were regularly used to traffic women.

7.      Rather than taking timely and effective measures to stop profiting from this epidemic, Defendants chose to ignore the presence of sex trafficking on their properties, and instead profited millions of dollars from renting rooms, and acquired valuable customer data by providing free Wi-Fi services to customers, including Plaintiff's trafficker.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

8.      With the knowledge that their hotels were used for sex trafficking, and after the decision to refrain from taking measures to stop sex trafficking at their hotels, each hotel named in this complaint effectively operated as a trafficking safe house.

9.      T.C.'s trafficker felt safe to operate a sex trafficking at and through each hotel safe house named in this Complaint. He paid in cash if he chose to, requested rooms away from other guests, paid for extended stays on a day-to-day basis, he facilitated a flow of male visitors in and out of the hotel room where Plaintiff was located even though those visitors were not guests at the hotel, kept a "Do Not Disturb" sign on the door, were instructed to use specific and secluded entrance/exits where other guests would not see, as well as he would threaten and at times, physically harm T.C. if she didn't do what he told her to. Even with visible signs of physical abuse to T.C. no one at the named Defendants looked into it any further than how much money they could profit off of what was happening. T.C.'s trafficker did all of this with impunity because the Defendants were willing to assist him and refused to take any measures to stop him or to protect T.C.

10.     As a result, every single time T.C. stayed in one of Defendants' hotel rooms, she was subjected to the horrors of being repeatedly raped, multiple times a day, by dozens of different strange men who were only at the hotels to commit sexual offenses against her.

11.     The Defendants make millions from participating in ventures they know or should have known involve violations of 18 U.S.C. § 1591(a) by renting rooms where sex trafficking victims are harbored night after night. Defendants and traffickers have a mutually beneficial relationship fueled and funded by the sexual exploitation of victims. They are partners in crime.

12.     In this case, Defendants directly profited each time a room was rented for the purpose of harboring T.C. for sex trafficking.

13.     Each franchisee defendant knew, or was aware of, an established modus operandi that would cause T.C. to engage in forced sex work.

14.     Each Defendant, in violation of 18 U.S.C. § 1595, knowingly benefitted from participation in a venture that it knew, or at the very least should have known, to be engaging in sex trafficking of T.C. in violation of 18 U.S.C. § 1591(a).

**COMPLAINT AND DEMAND FOR JURY TRIAL**

15.    T.C. was trafficked for commercial sex and suffered severe physical and emotional abuse under duress at the Motel 6 and Hilton franchises. The trafficking at each of these hotels was open and obvious to anyone working or staying there.

16.    As a direct and proximate result of Defendants providing a safe house to her trafficker and Defendants' consistent refusal to identify and prevent commercial sex trafficking, T.C. was trafficked, sexually exploited, and repeatedly victimized at the Motel 6 that operated under the brand flag of G6 Hospitality, LLC as well as the Hilton that operated under the brand flag of Hilton Worldwide.

17.    Plaintiff brings this action pursuant to TVPRA, 18 U.S.C. § 1595 against the Defendants who enabled, harbored, held, facilitated, turned a blind eye to, and financially benefited from a sex trafficking venture in which T.C. was trafficked for the purpose of commercial sex, sexually exploited, and brutally victimized in violation of 18 U.S.C. § 1591(a).

## PARTIES

18.    Jane T.C. Doe (T.C.) is a natural person who is currently a resident and a citizen of Billings, Montana. T.C. is a survivor of sex trafficking. In 2022 she was harbored and forced to engage in commercial sex acts for the benefit of her traffickers and Defendants.

a. Due to the sensitive, private, and potentially retaliatory nature of these allegations, this complaint identifies T.C. by her initials, only. Plaintiff will move the court to proceed under a pseudonym in all filings, all public Court proceedings, and to limit the disclosure of information about Plaintiff's true identity in order to protect Plaintiff and Plaintiff's identity.

b. Generally, pleadings must state the name of all parties.[1] However, there are exceptions when the issues involved may result in retaliation or harm to the Plaintiff.[2] For good cause, the Court may issue an order to protect a party or person from undue harms and burdens.

c. In order to maintain her privacy and safety, Plaintiff should not be compelled to disclose her identity. Plaintiff's privacy interest substantially outweighs the customary

---

[1] Def. R. Civ. P. 10(a)
[2] See WA Cases e.g., Doe v. Penzato, 2011 U.S. Dist. LEXIS 51681, *6-9 (N.D. Cal. May 13, 2011); Roe v. St. Louis Univ., 2009 U.S. Dist. LEXIS 27716, *13, (E.D. Mo. Apr. 2, 2009).

**COMPLAINT AND DEMAND FOR JURY TRIAL**

practice of judicial openness.[3] Plaintiff only recently escaped her traffickers and would be in danger of being forced back into trafficker should her traffickers learn information about her through publicly filed documents in this action. Moreover, Defendants will not be prejudiced. Plaintiff will agree to reveal her identity to Defendants for the limited purpose of investigating Plaintiff's claims once the parties have entered into a protective order. Plaintiff simply seeks redaction of Plaintiff's personally identifying information from the public docket and assurances that Defendants will not use or publish Plaintiff's identities in a manner that will compromise her personal life, future safety, or employment prospects, as well as her rights to privacy after being a victim of multiple sexual abuses and sexual assaults.

19. Defendant G6 Hospitality, LLC, is a Delaware corporation with its principal place of business in Carrollton, Texas and is registered to do business in California.

20. Defendant G6 Hospitality, IP, LLC is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

21. Defendant G6 Hospitality Property, LLC, is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

22, Defendant G6 Hospitality Purchasing, LLC is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

23. Defendants, G6 Hospitality, L.L.C., G6 Hospitality IP, L.L.C., G6 Hospitality Property, L.L.C., G6 Hospitality Purchasing, L.L.C., G6 Hospitality Franchising, L.L.C. will collectively be referred to as "G6".

20. Defendant Motel 6 Operating, L.P., also known and doing business as Motel 6, Inc., is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

21. Defendants Motel 6 Operating, L.P. and Motel 6, Inc., will collectively be referred to as "Motel 6".

22. Defendant Hilton Operating Company, Inc. is a for-profit Delaware Corporation with its principal place of business in McLean, Virginia and registered to do business in California.

---

[3] See WASHINGTON cases *Doe v. Frank,* 951 F.2d 320 , 323 (11th Cir. 1992) (internal citation and quotations omitted).

**COMPLAINT AND DEMAND FOR JURY TRIAL**

23.    Defendant Hilton Honors Worldwide is a for-profit Delaware Corporation with its principal place of business in McLean, Virginia and registered to do business in California.

24.    Defendants Hilton Operating Company, Inc., Hilton Worldwide and Hilton Dallas Lincon Centre will collectively be referred to as "Hilton".

25.    Defendants G6 Hospitality, L.L.C., G6 Hospitality IP, L.L.C., G6 Hospitality Property, L.L.C., G6 Hospitality Purchasing, L.L.C., G6 Hospitality Franchising, L.L.C., Motel 6 Operating, L.P., and Motel 6, Inc., Hilton Operating Company, Inc., Hilton Worldwide, and Hilton will collectively be referred to as Hotel Defendants.

26.    G6 is a hospitality company that, at the time of the incidents alleged herein, directly and through its agents, affiliates, and franchisee Defendant Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center offered public lodging services at the Motel 6 Dallas, Tx - Market Center located at 1625 Regal Row in Dallas, Texas under G6's Motel 6 brand:

i. G6 conducts its business under its legal name and offers franchises in the United States under the brand marks Studio 6 and Motel 6.

ii. As a hotel operator brand, G6 controls the training, procedures, and policies for its brand hotels, including Motel 6 Dallas, Tx - Market Center where T.C. was trafficked.

iii. G6 requires franchisees, including Motel 6, Inc. to strictly conform with its brand standards, to comply with all local, state, and federal laws, and considers guest safety and respect a component of its social impact.[4]

iv. G6 requires franchisees, including Motel 6, Inc., to comply with anti-trafficking policies and procedures. These policies and procedures were generated solely by G6, distributed to all franchisee hotels by G6, and required franchisee employees to report potential criminal activity and indices of human trafficking to G6's upper-level management. Employees of the Motel 6, Inc. d/b/a Motel 6 Dallas, Tx - Market Center witnessed obvious signs of Plaintiff's trafficking, and yet their employees (along with G6) continued renting rooms to Plaintiff's trafficker.

---

[4] https://g6hospitality.com/about-us/our-impact-2/.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

v. Through its franchise agreement with Motel 6, Inc. d/b/a Motel 6 Dallas, Tx - Market Center participated in a venture because they took part in a common undertaking involving risk and potential profit.

vi. Through its franchise agreement with Motel 6, Inc. d/b/a Motel 6 Dallas, Tx - Market Center, G6 knowingly benefited or received something of value (here, a percentage of gross room revenue for the money generated through the operation of its franchised hotels, including the rates charged for the rooms in which Plaintiff was trafficked), from its facilitation of or participation in a venture (here, venturing into the continuous business relationship in the hotel sphere through its franchise agreement in a context where G6 was the primary facilitator or participant in renting rooms; because G6 controlled booking and payment processing for the rental of rooms at its franchised hotels; because G6 fixed the price of room rentals; and because the franchisee directly interfaced with Plaintiff's trafficker and rented rooms to him in compliance with G6's procedures)[5] which it knew or should have known to engage in sex trafficking through the room rentals in which T.C. was trafficked.

vii. As part of its franchise agreement with Defendant Motel 6, Inc. d/b/a Motel 6 Dallas, Tx - Market Center, G6 provided, *inter alia*, on-site and other opening training and assistance; received and receives a percentage of the gross room revenue from the money generated by the operations of Motel 6 Dallas, Tx - Market Center operated by Defendant Motel 6, Inc., including a percentage of the rate charged for the rooms in which T.C. was trafficked; received and receives program fees through a percentage fee taken from gross room revenues generated by the operations of Motel 6 Dallas, Tx - Market Center operated by Defendant Motel 6, Inc., including a percentage of the rate charged for the rooms in which T.C. was trafficked; required Defendant Motel 6, Inc. and other franchisees to attend G6's annual conference; offered additional training to

---

[5] *See* J.M. v. Choice Hotels Intl., Inc., 2023 WL 3456619 (E.D.C.A. May 15, 2023) (finding venture prong satisfied where plaintiff alleged franchisor defendant required franchisee hotels to report sex trafficking to upper-level management and where hotel employees witnessed open and obvious signs of sex trafficking); *Cf Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 727 (11th Cir. 2021) (declining to consider a business venture theory because these allegations were incompatible with those in the operative complaint and because this theory was raised for the first time on appeal).

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Defendant Motel 6, Inc. as a franchisee including but not limited to general management training; received and collected payment invoice and processing fees; offered wireless internet access to franchisees, including Defendant Motel 6, Inc., and required franchisees, including Defendant Motel 6, Inc. to comply with the standards and policies in G6's operating manual.

viii. G6 claims its teams regularly assess properties to ensure safety and security measures are in place.[6] G6 mandates human trafficking prevention training; this training teaches franchisee employees how to recognize and report human trafficking. *Id*. G6 regularly assesses its franchised locations, including the Motel 6, Inc. d/b/a Motel 6 Dallas, Tx - Market Center, to ensure its human trafficking training is completed. *Id*.

ix. G6 is subject to the jurisdiction of this Court because it regularly transacts business in California, is registered to do business in California, entered into and remains in franchise agreements with California entities and/or entities operating hotels in California, including its franchise agreement with Motel 6, Inc. d/b/a Motel 6 Dallas, Tx - Market Center where T.C. was trafficked, contracts to supply services in California, caused indivisible injuries to Plaintiff in California, and knowingly profited from an illegal sex trafficking venture at the Motel 6, Inc. d/b/a Motel 6 Dallas, Tx - Market Center located at 1625 Regal Row, Dallas, Texas.

27. Motel 6, Inc. d/b/a Motel 6 Dallas, Tx - Market Center is a California limited partnership with its principal place of business located at 1625 Regal Row in Dallas, Texas. Motel 6, Inc., doing business as Motel 6 Dallas, Tx - Market Center, is a hospitality company and franchisee of Defendant G6 and does business as the Motel 6 Dallas, Tx - Market Center located at 1625 Regal Row in Dallas, Texas. Directly and through its franchise agreement with Defendant G6, Defendant Motel 6, Inc. directly offered public lodging services at the Motel 6 Dallas, Tx - Market Center located at 1625 Regal Row in Dallas, Texas.

i. Defendant Motel 6, Inc. is a franchisee of G6 and does business as Motel 6 Dallas, Tx - Market Center.

---

[6] https://g6hospitality.com/g6-hospitality-partners-with-ecpat-usa-to-combat-trafficking-and-exploitation/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

ii. Franchised Motel 6 motels are identified by G6's trademark, "Motel 6" and by certain other trade names, service marks, trademarks, logos, emblems, and indicia of origin (known as "proprietary marks").

iii. As a G6 franchisee Motel 6, Inc. d/b/a Motel 6 Dallas, Tx - Market Center was required to comply with G6's anti-trafficking policies and procedures. These policies and procedures required employees of Motel 6, Inc. d/b/a Motel 6 Dallas, Tx - Market Center to report potential criminal activity and indices of human trafficking to G6's upper-level management.

iv. Every employee of Motel 6, Inc. d/b/a Motel 6 Dallas, Tx - Market Center underwent human trafficking prevention training which teaches employees how to recognize and report human trafficking.

v. As outlined below, employees of Motel 6, Inc. d/b/a Motel 6 Dallas, Tx - Market Center witnessed open and obvious signs of Plaintiff's trafficking, and yet continued, with G6, renting rooms to her trafficker.

vi. As a G6 franchisee, Defendant Motel 6, Inc. received confidential operating and brand standard manuals that contained both mandatory and recommended standards and procedures Defendant Motel 6, Inc. was required to use when operating the Motel 6 Dallas, Tx - Market Center.

vii. The franchise agreement Defendant Motel 6, Inc. entered into with G6 granted Defendant Motel 6, Inc. the right to use Motel 6 trademarks for the operations of the Motel 6 Dallas, Tx - Market Center where Plaintiff was trafficked.

viii. Defendant Motel 6, Inc. was responsible for the day-to-day operations, under G6's supervision, at the Motel 6 Dallas, Tx - Market Center where T.C. was trafficked, and was required, by G6 to undergo on-site and other opening training; provide G6 with a percentage of the gross room revenue from the money generated by the operations of Motel 6; provide G6 with a percentage of the rate charged for the rooms in which T.C. was trafficked; provide G6 with program fees from a percentage taken from gross room revenues generated by

**COMPLAINT AND DEMAND FOR JURY TRIAL**

the operations of Motel 6 Dallas, Tx - Market Center, including a percentage of the rate charged for the rooms in which T.C. was trafficked; required to attend G6's annual conference; required to use the wireless internet access provided by G6; and was required to comply with the standards and policies in G6's operating manual.

ix. As outline fully below, Motel 6, Inc. d/b/a Motel 6 Dallas, Tx - Market Center witnessed open and obvious signs of sex trafficking and would have reported suspected red flags to G6.

x. Through its franchise agreement with G6, Motel 6, Inc. d/b/a Motel 6 Dallas, Tx - Market Center knowingly benefited or received something of value (here, a percentage of gross room revenue for the money generated through the operation of its franchised hotels, including the rates charged for the rooms in which Plaintiff was trafficked), from its facilitation of or participation in a venture[7] (here, venturing into the continuous business relationship in the hotel sphere through its franchise agreement in a context where G6 was the primary facilitator or participant in renting rooms; where G6 controlled booking and payment processing for the rental of rooms at its franchised hotels; because G6 fixed the price of room rentals; and because the franchisee directly interfaced with Plaintiff's trafficker and rented rooms to him in compliance with G6's procedures), which it knew or should have known to engage in sex trafficking through room rentals in which Plaintiff was trafficked. Defendant Motel 6, Inc. is subject to the jurisdiction of this Court because it is a California limited partnership, regularly does business in California, entered into a franchise agreement with G6 in California, caused indivisible injuries to Plaintiff in California, contracts to supply services in California, and knowingly profited from an illegal sex trafficking venture at the Motel 6 Dallas, Tx - Market Center located at 1625 Regal Row, Dallas, Texas.

---

[7] *See* n. 3, *supra.*

**COMPLAINT AND DEMAND FOR JURY TRIAL**

28.     Defendant Hilton is a hospitality company that, at the time of the incidents alleged herein, directly and through its agents, affiliates, subsidiaries, and franchisee offered public lodging services at the Hilton Dallas Lincoln Centre located at 5410 Lyndon B Johnson Fwy, in Dallas, TX.

i. Hilton Dallas Lincoln Centre is a Hilton brand hotel. Defendant Hilton Dallas Lincoln Centre (a Hilton franchisee) does business as Hilton Dallas Lincoln Centre.

ii. As a hotel operator brand, Hilton controls the training, procedures, and policies for the hotels that bear its brand name and with whom it has franchise agreements, including the Hilton Dallas Lincoln Centre where T.C. was trafficked.

iii. The Hilton brand maintains that it considers guest safety and security important and requires the brand hotels in its portfolio to comply with Hilton brand standards and all local, state, and federal laws.

iv. Hilton requires franchisees, including Defendant Hilton Dallas Lincoln Centre, to comply with anti-trafficking policies, procedures, and training. These policies and procedures were generated solely by Hilton, distributed to all franchisee hotels by Hilton, taught employees how to identify human trafficking, and required franchisee employees to report potential criminal activity and indices of human trafficking to Hilton's upper-level management.

v. Defendant Hilton Dallas Lincoln Centre employees observed open and obvious signs of Plaintiff's trafficking and would have reported these signs to Hilton. Despite these signs and reporting, Hilton Dallas Lincoln Centre and Hilton continued renting rooms to Plaintiff's trafficker.

vi. Through its franchise agreement with Hilton Dallas Lincoln Centre, Hilton knowingly benefited or received something of value (here, a percentage of gross room revenue for the money generated through the operation of its franchised hotel, including the rates charged for the rooms in which Plaintiff was trafficked), from its facilitation of or participation in a venture16 (here, venturing into the continuous business relationship in the hotel sphere through its franchise agreement in a context where Hilton was the primary facilitator or participant in renting rooms; because Hilton controlled booking

**COMPLAINT AND DEMAND FOR JURY TRIAL**

and payment processing for the rental of rooms at its franchised hotels; because Hilton fixed the price of room rentals; and because the franchisee directly interfaced with Plaintiff's trafficker and rented rooms to him in compliance with Hilton's procedures)which it knew or should have known to engage in sex trafficking through the room rentals within which T.C. was trafficked.

vii. Hilton receives a percentage of the gross room revenue from the money generated by the operation of Hilton hotels, including a percentage of the rate charged for the rooms in which Plaintiff was trafficked at the Hilton Dallas Lincoln Centre.

viii. Hilton, d/b/a Hilton Dallas Lincoln Centre, controls the training, procedures, and policies for the Hilton Dallas Lincoln Centre where T.C. was trafficked, which bears its brand name. Hilton controls the training, procedures, and policies for all franchisees operating under its brand flag.

ix. Hilton is subject to the jurisdiction of  this Court because it regularly transacts business in California, is registered to do business in California, operates, owns, and/or franchises dozens of hotels in California including the Hilton Dallas Lincoln Centre, contracts to supply services in California, caused indivisible injuries to Plaintiff in a common course of conduct arising in California, and knowingly profited from an illegal sex trafficking venture at the Hilton Dallas Lincoln Centre.

29.    Whenever reference is made in this Complaint to any act, deed, or conduct of the Hotel Defendants, the allegation is that the Hotels Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control or transaction of the ordinary business and affairs of the Hotel Defendants, G6 Defendants and Hilton Defendants.

## JURISDICTION AND VENUE

30.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States.

31.    Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action, including the

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Defendants' misconduct and omissions, occurred in the judicial district where this action is brought.

32.    Venue is proper in the Court pursuant to 28 U.S.C. §1391 (b)(1) because, pursuant to 28 U.S.C. §§1391(c)(2) and 1391(d) at least one Defendant has a principal address in Sacramento County and all Defendants are registered to do business in the state of California.

## SEX TRAFFICKING UNDER FEDERAL LAW

33.    Sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of causing the person to engage in a commercial sex act either (1) before the person turns 18 years old; or (2) through force, fraud, or coercion.

34.    The requirements for liability under the TVPRA on a beneficiary theory can be stated as follows: (1) the person or entity "knowingly benefits, financially or by receiving anything of value" (2) "from participating in a venture" (3) that the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. §1595(a).

35.    "Sex trafficking" is defined by the TVPRA under 22 U.S.C.§7102(12) as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act."

36.    The term "severe forms of trafficking in persons" includes "sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced the perform such act has not attained 18 years of age." 22 U.S.C. §7102(11).

## FACTUAL BACKGROUND

37.    T.C. brings her claims against hotel franchisors, franchisees, owners, operators, and managers for violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA") 18 U.S.C. § 1595(a).

38.    The following list outlines the roles of each defendant at each property that is the subject of this complaint:

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Motel 6 Dallas, Tx - Market Center

Franchisor: G6 Hospitality

Franchisee, Owner, Operator, Manager: Motel 6, Inc.

Hilton Dallas Lincoln Centre

Franchisee, Owner, Operator, Manager: Motel 6, Inc.

39.    Defendants who knowingly recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, or solicit by any means a person with knowledge that means of force, threats of force, fraud, coercion, or any combination of such means will be used to cause the person to engage in a commercial sex act shall be held liable under the civil perpetrator liability section of 1595.

40.    Here, perpetrator liability applies to all Defendant franchisees, operators, and managers who were eyewitnesses and accomplices to the established modus operandi that caused T.C. be forced to perform commercial sex acts on their properties. This includes Motel 6, Inc. and Hilton.

41.    The TVPRA also prohibits Defendants from profiting from any venture they know or should know involves a violation of § 1591, and thereby establishes a non-delegable duty to exercise reasonable diligence and reasonable care.

42.    This beneficiary liability of § 1595 applies to all defendants who each (1) knowingly benefitted (2) "from participation in a venture" (3) that it "knew or should have known has engaged in" trafficking the Plaintiff. This includes all named Defendants, including the franchisor Defendants.

43.    To save costs and continually reap millions of dollars in profits, all Defendants failed to create, adopt, implement, and enforce adequate company-wide policies and procedures regarding suspected incidents of human trafficking and at their hotel properties.

44.    Furthermore, Defendants did not train staff sufficiently on how to identify and respond to suspected human trafficking and failed to conduct audits confirming compliance with policies and procedures.

45.    Defendants ignored reports and data on suspected incidents or occurrences of human trafficking on their properties and failed to analyze the rate at which those occurrences changed

**COMPLAINT AND DEMAND FOR JURY TRIAL**

as a result of implementing human trafficking policies and procedures. Defendants did not establish mandatory and secure reporting mechanisms at the point of sale.

46.     With little to no risk posed to traffickers seeking to use Defendants' rooms as a safe location to force victims like T.C. to engage in commercial sex against her will, the sex trade continues to thrive at Defendants' properties while Defendants reap the benefits.

47.     T.C. was raped nearly one thousand (1,000) times at Defendants' hotels. During that time, T.C. knew of countless other victims who were also raped at Defendants' hotels. Often, hotel employees would not only witness T.C. being trafficked, but they would actively help her trafficker perpetrate the crime, and on some occasions, would even watch T.C. as she was being raped or participate in the rape themselves.

48.     Plaintiff's injuries are indivisible and cannot be separated. Plaintiff's injuries are the result of continued instances of ongoing violent, traumatizing sexual exploitation.

### THE SEX TRAFFICKING OF T.C.

49.     The facts alleged herein stem from human trafficking for commercial sex in California. While victimized by her trafficker, T.C. was subject to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, kidnapping, and imprisonment at the hotels owned, operated, managed, supervised, and/or branded by Defendants for approximately fifteen years.

50.     T.C. was sold to her trafficker while at an anti-trafficking safe house [after her father was arrested and imprisoned for sexual abuse] when she was approximately 8 years old. T.C. was sold to a man named Cal who then trafficked her until she was approximately 23 years old.

51.     T.C. has never known a home or a family or a life without suffering and being forced into sexual slavery.

52.     T.C.'s trafficker would threaten her and use physical force and abuse to force T.C. to comply. Additionally, T.C.'s trafficker would market and sell her to kink groups. This meant that clients would pay a premium for cutting, biting, burning, hitting, ripping hair, branding, bestiality, scarring and more.

53.     Each day, he forced T.C. to be sold to the highest bidder and she would endure emotional, physical and mental trauma for hours. T.C. was not allowed to leave the hotel rooms

**COMPLAINT AND DEMAND FOR JURY TRIAL**

in which she was trafficked for any reason, including to feed herself. Her trafficker would beat, yell, and torment T.C. often and loudly in the public common areas of the hotels in which she was trafficked.

## The Motel 6 Dallas, Tx - Market Center branded by Defendant G6 and Owned, Operated, and Managed by Defendant Motel 6, Inc.

54. T.C.'s trafficker would frequently rent rooms at the Motel 6 Dallas, Tx - Market Center. Motel 6, Inc. was doing business as Motel 6 Dallas, Tx - Market Center, operated the same, and conducted the day-to-day business of the same. The Motel 6 Dallas, Tx - Market Center was operated under Defendant G6's brand, was supervised by G6, and bound to follow directives and operating requirements as outlined by G6. These directives include mandatory human trafficking training and procedures, which required Motel 6 employees to report criminal activity and indices of human trafficking to G6. Motel 6 should have reported suspected indices of human trafficking to G6's corporate executives and upper-level management pursuant to G6's human trafficking training, policies, and procedures.

55. Defendant Motel 6 and Defendant G6 were parties to a franchise agreement. Through this franchise agreement, Defendant Motel 6 and G6 engaged in a venture; they took part in a common undertaking involving risk and potential profit. More specifically, Motel 6 and G6 ventured into a continuous business relationship in the hotel industry. G6 was the primary facilitator or participant in renting rooms; G6 controlled booking and payment processing for the rental of rooms at its franchised hotels which was carried out by its franchisees; G6 fixed the price of room rentals – rentals effectuated by its franchisee. Given G6's role as the primary facilitator or participant in renting rooms (including the rooms rented to Plaintiff's trafficker), and Motel 6's necessary participation in the room rentals by interfacing with customers, including Plaintiff's trafficker, a continuous business relationship existed between the trafficker, G6, and Motel 6.

56. T.C.'s trafficker frequently rented rooms at the Motel 6 Dallas, Tx - Market Center because the rooms at this hotel provided a convenient and anonymous location to which he could invite buyers.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

57.    T.C.'s trafficker intermittently rented rooms at the Motel 6 Dallas, Tx - Market Center for weeks or months at a time.

58.    While held captive at the Motel 6 Dallas, Tx - Market Center, T.C. encountered hotel staff evidencing obvious signs of abuse, including but not limited to visible bruising, malnourishment, being in a drugged state, and clothing inappropriate for the weather or general public.

59.    T.C.'s trafficker became increasingly violent during their stays at the Motel 6 Dallas, Tx - Market Center as well as the clients T.C.'s trafficker was paid to rape T.C.

60.    The Motel 6 Dallas, Tx - Market Center also allowed certain people to rent the rooms, trafficker paid in cash, and allowed T.C.'s trafficker to pay for extended stays even though it was not allowed as well as other benefits.

61.    Despite these repeated, open, and obvious signs of Plaintiff's trafficking, G6 and Motel 6, Inc. continued renting rooms to Plaintiff's trafficker.

**The Hilton Dallas Lincoln Centre branded by Defendant G6 and Owned, Operated, and Managed by Defendant Hilton**

62.    T.C.'s trafficker would frequently rent rooms at the Hilton Dallas Lincoln Centre. Hilton was doing business as Hilton Dallas Lincoln Centre, operated the same, and conducted the day-to-day business of the same. The Hilton Dallas Lincoln Centre was operated under Defendant Hilton's brand, was supervised by Hilton, and bound to follow directives and operating requirements as outlined by Hilton. These directives include mandatory human trafficking training and procedures, which required Hilton employees to report criminal activity and indices of human trafficking to Hilton. Hilton should have reported suspected indices of human trafficking to Hilton's corporate executives and upper-level management pursuant to Hilton's human trafficking training, policies, and procedures.

63.    Defendants Hilton were parties to a franchise agreement. Through this franchise agreement, Defendant Hilton engaged in a venture; they took part in a common undertaking involving risk and potential profit. More specifically, Hilton ventured into a continuous business relationship in the hotel industry. Hilton was the primary facilitator or participant in renting rooms; Hilton controlled booking and payment processing for the rental of rooms at its

**COMPLAINT AND DEMAND FOR JURY TRIAL**

franchised hotels which was carried out by its franchisees; Hilton fixed the price of room rentals – rentals effectuated by its franchisee. Given Hilton's role as the primary facilitator or participant in renting rooms (including the rooms rented to Plaintiff's trafficker), and Hilton's necessary participation in the room rentals by interfacing with customers, including Plaintiff's trafficker, a continuous business relationship existed between the trafficker, and Hilton.

64. T.C.'s trafficker frequently rented rooms at the Hilton Dallas Lincoln Centre because the rooms at this hotel provided a convenient and anonymous location to which he could invite buyers.

65. T.C.'s trafficker intermittently rented rooms at the Hilton Dallas Lincoln Centre for weeks or months at a time.

66. While held captive at the Hilton Dallas Lincoln Centre, T.C. encountered hotel staff evidencing obvious signs of abuse, including but not limited to visible bruising, malnourishment, being in a drugged state, or obvious signs of drug use and substance abuse, and clothing inappropriate for the weather or general public.

67. T.C.'s trafficker became increasingly violent during their stays at the Hilton Dallas Lincoln Centre as well as the clients that paid T.C.'s trafficker to rape T.C. became increasingly more violent in their acts.

68. The Hilton Dallas Lincoln Centre also allowed certain people to rent the rooms and allowed T.C.'s trafficker to pay for extended stays even though it was not allowed as well as other benefits. T.C.'s trafficker also almost always paid in cash.

69. Despite these repeated, open, and obvious signs of Plaintiff's trafficking, Hilton continued renting rooms to Plaintiff's trafficker.

**EACH DEFENDANT HAS BEEN UNIQUELY AWARE OF TRAFFICKING AT HOTELS ACROSS THEIR BRANDS BECAUSE OF THEIR INTERNET POLICIES**

70. Defendants each understand the importance that internet access can have to facilitate human trafficking.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

71.    Defendants each signed on to ECPAT publicly committing to participate in the programs shown to assist in identifying and preventing human trafficking inside their branded hotels including following the ECPAT checklist.

72.    The ECPAT checklist specifically indicates that Wi-Fi passwords should be changed often and access to websites like Backpage and Craigslist Erotic services from their hotels should be monitored.

73.    Defendant G6 is the face and a signatory to the ECPAT anti-trafficking knowledge, guidance, and information necessary to prevent human trafficking in their hotel properties.

74.    Defendant G6 publicly committed to educating their hotel properties on human trafficking and should have created brand standards for implementation, mandates, and operations.

75.    Defendants G6, and Motel 6 recognize the value of offering free internet service to their customers.

76.    Defendants G6, and Motel 6 require each hotel property to offer free internet service.

77.    Defendants G6, and Motel 6 require hotel properties to use brand approved internet providers, who are sufficiently knowledgeable, to provide cybersecurity and prevent illegal activity from occurring at their hotels.

78.    Defendants G6, and Motel 6's hotels are provided access to internet data which they know will help enhance customer service or otherwise permits the brand to exploit by other means.

79.    Internet access at their brand hotel properties is through two means:

　　　　i. First, Defendants G6, and Motel 6 provide internet access to guests through wireless internet accessible in their guest rooms and;

　　　　ii. Second, provide internet access through publicly accessible wireless networks accessible in the lobby of other common areas of their brand hotels.

80.    Defendants collect data on internet usage through the wireless internet services that Defendants G6, and Motel 6 provide. Such data includes:

**COMPLAINT AND DEMAND FOR JURY TRIAL**

i. The IP address and other identifying information for all devices that access the internet through G6, and Motel 6's wireless networks;

ii. The identity of websites accessed by those devices through the IP addresses of the servers that host those websites; and

iii. Information about the user accessing the internet through G6, and Motel 6's wireless networks, including the users' room number, a user-provided name, and other identifying information.

81. G6, and Motel 6's internet access policies each purportedly prohibit the use of the internet access that they provide for unlawful purposes.

82. In violation of their federal statutory obligations under the TVPRA, G6, and Motel 6 failed to monitor internet use at hotels across their brands (including those owned and operated by Motel 6 as named herein) and the local hotels at issue in this case, in order to identify signs and perpetrators of commercial sex trafficking within their walls.

83. G6, and Motel 6 knew or should have known of the prevalent use of websites like Backpage.com, Craigslist.com, and other similar websites traffickers use to pose advertisements for sex within their properties.

84. Despite that knowledge, G6, and Motel 6 made no effort to flag or block the use of such websites by traffickers and instead exercised willful blindness to use of their wireless networks to further human trafficking in their hotels, including the hotels where Plaintiff was trafficked.

85. G6, and Motel 6's blindness facilitated trafficking at their hotels by allowing traffickers to post unlawful advertisements through their own wireless networks in violation of their own policies on the use of said networks.

**A. DEFENDANTS WHO OWNED, OPERATED, AND MANAGED THE HOTEL PROPERTIES ARE LIABLE UNDER THE CIVIL PERPETRATOR LIABILITY SECTION OF 18 U.S.C. § 1595**

86. Defendants Motel 6, Inc. and Hilton are liable under the civil perpetrator liability section of 18 U.S.C. 1595 because they knowingly harbored or maintained T.C. with knowledge that fraud or force would be used to cause her to engage in a commercial sex act.

87.    Knowledge does not require certainty as to a future act but rather is a state of mind in which the knower is familiar with the pattern of conduct.

88.    Here, each Defendant knew, in the sense of being aware of an established modus operandi that would in the future cause T.C. to engage in a commercial sex act.

### i. Motel 6 is liable under the civil perpetrator liability section of 18 U.S.C. § 1595

89.    Motel 6 had actual knowledge that T.C. was being trafficked and knowingly recruited, enticed, harbored, patronized, and solicited T.C. at Motel 6 Dallas, Tx - Market Center with knowledge that means of force, threats of force, fraud, and coercion would be used to force T.C. to engage in commercial sex acts.

### ii. Hilton is liable under the civil perpetrator liability section of 18 U.S.C. § 1595

90.    Hilton had actual knowledge that T.C. was being trafficked and knowingly recruited, enticed, harbored, patronized, and solicited T.C. at Hilton Dallas Lincoln Centre with knowledge that means of force, threats of force, fraud, and coercion would be used to force T.C. to engage in commercial sex acts.

## B. DEFENDANTS ARE DIRECTLY LIABLE UNDER SECTION 1595 FOR THEIR INACTION AND FAILURES RESULTING IN COMMERCIAL SEX TRAFFICKING AT THE HOTELS BRANDED, OPERATED, AND/OR OWNED BY THEM

91.    Defendants Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center and Hilton Dallas Lincoln Centre have been on notice since as early as 2006, that sex trafficking occurs in the hotels they own, operate, supervise, and brand, and that the hotel industry is the hub of sex trafficking, yet all of them failed and persist in failing to fulfill their statutory responsibility resulting in commercial sex trafficking occurring in their branded, owned, supervised, and operated properties.

### i. Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center  is Directly Liable

92.    Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center  is a franchisee of Defendant G6.

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

93.    It is directly liable under the TVPRA because it had constructive knowledge of the extensive sex trafficking occurring at its hotel. Motel 6 Dallas, Tx - Market Center's own employees observed, and directly or indirectly assisted in, Plaintiff's sex trafficking.

**ii. Hilton d/b/a Hilton Dallas Lincoln Centre is Directly Liable**

94.    Hilton d/b/a Hilton Dallas Lincoln Centre is a franchisee of Defendant Hilton.

95.    It is directly liable under the TVPRA because it had constructive knowledge of the extensive sex trafficking occurring at its hotel. Hilton Dallas Lincoln Centre's own employees observed, and directly or indirectly assisted in, Plaintiff's sex trafficking.

**C. DEFENDANTS HILTON, G6, and MOTEL 6 ARE VICARIOUSLY LIABLE FOR THE CONDUCT OF THE LOCAL OPERATING HOTELS WHO ARE EITHER THEIR FRANCHISE PARTNERS OR AGENTS DUE TO THEIR LEVEL OF CONTROL**

96.    In addition to and apart from Defendant Hilton, G6, and Motel 6's direct liability, Plaintiff alleges said Defendants are also vicariously liable for the conduct of the local hotels.

97.    Hotel brands or flags lend their name and likeness to third party owners, while the building and operations are run by a franchisee or third-party management company under the brands' control. In return, the parent brand exchanges the high risk that is inherent in owning an asset like a hotel for the low risk associated with owning a contract or franchise agreement and still profits from putting heads in beds.

98.    The average consumer, including Plaintiff and her traffickers, do not see this relationship. The parent brand gives the property its identity. It provides signage on and in front of the building that assures customers that if they check into that hotel they can expect the standards consistent with the parent hotel brand. The same brand is emblazoned on everything in the hotel from the pens in the bedside tables to the staff uniforms at the front desk.

99.    In addition to brand recognition, a marketing organization, hotel listings in the Global Distribution System (GDS), and other online travel agency databases, the brand provides the local hotel with access to its brand wide central reservation system, 800 number, revenue management tools, world-class loyalty programs, and a website. Thus, booking and room

reservations are controlled by the corporate parent brand. The corporate brand parents, and specifically here Hilton, G6, and Motel 6, can see booking and reservation trends, including for those hotels where Plaintiff was trafficked.

100.    The local hotel typically pays around 10% of their total revenue back to the parent hotel brand and is required to develop and maintain the property in accordance with the parent brand's standards as they are laid out in the franchise agreement. Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center, and Hilton d/b/a Hilton Dallas Lincoln Centre did so here.

101.    Per the contract, franchise agreement, or direct ownership, supervision, and operation by the brand, the parent brand may enforce these standards through periodic inspections and even termination of the agreement if the local hotel is found to be inadequate. The right of the parent hotel brand to enforce their brand standards is also their responsibility.

**i. G6 is indirectly and vicariously liable under the TVPRA as a principal for the failures of its agent Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center**

102.    Defendant G6 is in a franchise agreement with Defendant Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center .

103.    Defendant G6 has and exercised control over the local hotel with respect to many issues regarding the day-to-day operation of the property, but also specifically with regard to the local hotel's policy on human trafficking.

104.    G6 exercises actual control over its franchisees, including the Motel 6 Dallas, Tx - Market Center, through control over the brand standards which are reflected through the franchise agreements entered into with each franchisee subsidiary or operating hotel.

105.     As a hotel operator brand, G6 controls the training, procedures, and policies for its brand hotels, including Motel 6 Dallas, Tx - Market Center where T.C. was trafficked.

106.    G6 requires franchisees, including Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center, to strictly conform with its brand standards, and considers guest safety and respect a component of its social impact.

107.    Through its franchise agreement with Motel 6 doing business as the Motel 6 Dallas, Tx - Market Center , G6 knowingly benefited or received something of value from its facilitation of

**COMPLAINT AND DEMAND FOR JURY TRIAL**

or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals T.C. was victimized in.

108.    As part of its franchise agreement with Defendant Motel 6, G6 provided, inter alia, on-site and other opening training and assistance; received and receives a percentage of the gross room revenue from the money generated by the operations of Motel 6 Dallas, Tx - Market Center operated by Defendant Motel 6, Inc., including a percentage of the rate charged for the rooms in which T.C. was trafficked; received and receives program fees through a percentage fee taken from gross room revenues generated by the operations of Motel 6 Dallas, Tx - Market Center  operated by Motel 6, Inc., including a percentage of the rate charged for the rooms in which T.C. was trafficked; required Defendant Motel 6 and other franchisees to attend G6's annual conference; offered additional training to Defendant Motel 6 as a franchisee including but not limited to general management training; received and collected payment invoice and processing fees; offered wireless internet access to franchisees, including Defendant Motel 6, Inc., and required franchisees, including Defendant Motel 6, Inc. to comply with the standards and policies in G6's operating manual.

109.    G6 requires the hotels in its portfolio – including the Motel 6 Dallas, Tx - Market Center - to comply with G6 brand standards and all local, state, and federal laws.

110.    G6 claims its teams regularly assess properties to ensure safety and security measures are in place.

111.    G6 exercised control over the Motel 6 Dallas, Tx - Market Center by:

    i. distributing information to assist employees in identifying human trafficking;

    ii. providing a process for escalating human trafficking concerns within the organization;

    iii. requiring employees to attend training related to human trafficking;

    iv. providing new hire orientation on human rights and corporate responsibility;

    v. providing training and education to the local hotel through webinars, seminars, conferences, and online portals;

    vi. developing and holding ongoing training sessions on human trafficking; and

**COMPLAINT AND DEMAND FOR JURY TRIAL**

vii. providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

112.    The G6 branded hotel where T.C. was trafficked was and is the actual and apparent agent of G6 and together they offer, or offered, public lodging services in the hotel. This agency relationship was created through Defendant G6's exercise of an ongoing and systematic right of control over its franchised hotels, beyond that which is necessary to maintain basic standards, by Defendant G6's operations, including the means and methods of how its hotels conducted business through the following actions:

i. hosting online bookings on Defendant G6's domain;

ii. requiring G6 hotels to use Defendant G6's customer rewards program;

iii. setting employee wages;

iv. making employment decisions;

v. advertising for employment;

vi. sharing profits;

vii. standardized training methods for employees;

viii. building and maintaining the facility in a manner specified by the owner;

ix. standardized or strict rules of operation;

x. regular inspection of the facility and operation by owner;

xi. fixing prices;

xii. developing uniform and consistent policies regarding the prevention of commercial sex trafficking at brand properties, including a risk management process to identify, prevent, and mitigate risks for commercial sex trafficking103; and

xiii. other actions that deprive Motel 6 hotels of independence in business operations.

COMPLAINT AND DEMAND FOR JURY TRIAL

113.    An apparent agency also existed/exists between Defendant G6 and the Motel 6 Dallas, Tx - Market Center where Plaintiff was trafficked. Defendant G6 holds Studio 6 hotels to the public as possessing authority to act on its behalf.

114.    As alleged herein, the employees of the Motel 6 Dallas, Tx - Market Center  observed and were aware of Plaintiff's plight, yet the policies and procedures from Defendant G6 to address this victimization were either inadequate to prevent her trafficking or were not properly implemented due to lack of training, education, and/or enforcement by Defendant G6.

115.    As alleged herein and upon information and belief, the employees of the Studio 6 hotel were aware of Plaintiff's trafficking and pursuant to corporate-wide policies reported such activity directly to defendant G6, including illegal website use, booking and reservation history, payment by cash for several rooms at a time and visits from multiple men throughout the day.

116.    G6 was not only aware of Plaintiff's plight but also the failures of its own policies and procedures to protect her and prevent trafficking at the Studio 6 hotel where Plaintiff was trafficked.

117.    Given Defendant G6's public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its hotels, including the Motel 6 Dallas, Tx - Market Center , Defendant G6 breached its duties in the following ways:

      i. Failed (altogether or adequately) to distribute information to assist employees in identifying human trafficking;

      ii. Failed (altogether or adequately) to provide a process for escalating human trafficking concerns within the organization;

      iii. Failed (altogether or adequately) to mandate managers, employees, or owners attend training related to human trafficking;

      iv. Failed (altogether or adequately) to provide new hire orientation on human rights and corporate responsibility;

      v. Failed (altogether or adequately) to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

      vi. Failed (altogether or adequately) to develop and hold or require ongoing training sessions on human trafficking; and

**COMPLAINT AND DEMAND FOR JURY TRIAL**

vii. Failed (altogether or adequately) to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

118.    G6 brands may kick delinquent hotels out of its system, including the Motel 6 Dallas, Tx - Market Center where Plaintiff was trafficked, since it is at the expense of terminating their royalty payments. However, it is seldom done. Nevertheless, this consequence is what provides G6 the actual control over the Motel 6 Dallas, Tx - Market Center including control over how it confronts and deals with known traffickers and trafficking victims such as Plaintiff.

119.    G6 accepted the profits from T.C.'s trafficker even though the signs of her trafficking were open and obvious, and receipt of those profits was, based on information and belief, in direct violation of their own policies and procedures regarding the frequent repeat business they had with T.C.'s trafficker.

120.    G6 knew or should have known that such profits were derived from sex trafficker's illegal and tortious activities.

121.    If defendant G6 had ensured that the local hotel was following their policies on identifying victims of trafficking and undertaking actions to prevent the rental of rooms to known traffickers, rooms would not have been made available to T.C.'s trafficker and no profits would have been gained.

122.    Acceptance of these profits was G6's affirmation of the Motel 6 Dallas, Tx - Market Center's total inaction with regard to T.C.'s trafficker and her victimization.

///

///

## DEFENDANTS' LIABILITY UNDER THE TVPRA

**A. Defendants Knowingly Benefited Financially from The Sex Trafficking At The Local Hotels**

123.    Aside from their unique position in this growing epidemic, Defendants have the highest obligation and statutory duty to protect their guests from known dangers, including sex

trafficking and sexual exploitation, and should be held accountable when they fail to comply. As aptly stated in a publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry…and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so.

124. G6, Motel 6, Inc. d/b/a Motel 6 Dallas, Tx - Market Center, and Hilton d/b/a Hilton Dallas Lincoln Centre, profited from the sex trafficking of T.C. and knowingly or negligently aided and engaged with her trafficker in the venture.

125. G6 (through its franchisee Motel 6, Inc.), and Hilton, rented rooms to T.C.'s traffickers knowing, or should have known, that they were using the room to harbor sex trafficking victims, physically assault them, and subject them to repeated exploitation as they was forced into sexual servitude.

126. G6, Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center, and Hilton Dallas Lincoln Centre knew, or should have known, that sex trafficking victims were being trafficked at Defendants' brand hotels – including the Motel 6 Dallas, Tx - Market Center, and Hilton Dallas Lincoln Centre - and that they (Hilton, G6, and Motel 6) were knowingly benefiting financially from said exploitation, because T.C.'s traffickers frequented the Defendants' hotels and paid for the room rentals.

127. G6, Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center, and Hilton d/b/a Hilton Dallas Lincoln Centre profited from the sex trafficking of T.C. and knowingly or negligently aided and participated with T.C.'s traffickers in their venture. These Defendants took no action as T.C. repeatedly visited the hotel, often with different guests, without any luggage, avoiding all eye contact, and often displaying prominent bruising all over her person while in the constant presence of her trafficker.

128. G6, Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center, and Hilton d/b/a Hilton Dallas Lincoln Centre deliberately disregarded the implementation of best-known anti-trafficking policies, practices, and procedures to maintain profit.

129. G6, Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center, and Hilton d/b/a Hilton Dallas Lincoln Centre, knew that their expenses would increase if they hired more security personnel and funded more training programs. Additionally, G6, Motel 6 d/b/a Motel 6 Dallas, Tx -

Market Center, and Hilton d/b/a Hilton Dallas Lincoln Centre would lose revenue by preventing human traffickers from renting rooms. The combination of increased expenses and lost revenue meant less profit. In fact, profits were the driving force of their hollow "No Room for Trafficking" campaigns, as they improved Defendants image without any real impact on operations.

130.    G6, Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center, and Hilton d/b/a Hilton Dallas Lincoln Centre, all financially benefited from the sex trafficking of T.C. and other victims like her and developed and maintained business models that attract and foster the commercial sex market for traffickers (including buyers.)

131.    G6, Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center, and Hilton d/b/a Hilton Dallas Lincoln Centre, enjoy the steady stream of income that sex traffickers bring to their hotels, including the Motel 6 Dallas, Tx - Market Center and Hilton Dallas Lincoln Centre.

132.    Hilton, G6, and Motel 6, Inc. financially benefit from their ongoing reputation for privacy, discretion, and the facilitation of commercial sex.

133.    G6, Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center, and Hilton d/b/a Hilton Dallas Lincoln Centre, maintained their deficiencies to maximize profits by:

       i. Reducing the cost of training employees and managers of how to spot the signs of human trafficking and sexual exploitation and what steps to take;

       ii. Not refusing room rentals, or reporting guests to law enforcement, in order to maximize the number of rooms occupied and the corresponding rates, even if the rooms rented were to sex traffickers or buyers; and/or

       iii. Lowering security costs by not having proper security measures, including, but not limited to, employing qualified security officers to actively combat human trafficking and sexual exploitation.

**B. Defendants Hilton, G6, and Motel 6, Inc. participated in a venture at and through the local hotels**

134.    There was a continuous business relationship through the rental of rooms between Plaintiff's traffickers, Defendants Hilton, G6, Motel 6, Inc. and the local hotels they franchised,

**COMPLAINT AND DEMAND FOR JURY TRIAL**

operated, and/or owned including the Motel 6 Dallas, Tx - Market Center and Hilton Dallas Lincoln Centre.

135.    G6, Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center, and Hilton d/b/a Hilton Dallas Lincoln Centre, actively participated in this illegal endeavor by knowingly or negligently providing lodging to T.C.'s traffickers in which to harbor T.C. while they were trafficking her.

136.    G6, Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center, and Hilton d/b/a Hilton Dallas Lincoln Centre, actively participated in this illegal endeavor by knowingly or negligently providing lodging to those who purchased sex from T.C. in which to harbor T.C. while she was being trafficked.

137.    G6, Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center, and Hilton d/b/a Hilton Dallas Lincoln Centre, all had the opportunity to stop T.C.'s traffickers and offenders like him from victimizing T.C. and others like her. Instead, every Defendant failed to take reasonable measures to stop sex trafficking from occurring in their hotels.

138.    G6, Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center, and Hilton d/b/a Hilton Dallas Lincoln Centre, failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to improve awareness of sex trafficking and/or prevent sexual exploitation on their hotels.

139.    G6, Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center, and Hilton d/b/a Hilton Dallas Lincoln Centre, failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to improve awareness of sex trafficking and/or prevent sexual exploitation on their hotels.

140.    Even though G6, Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center, and Hilton d/b/a Hilton Dallas Lincoln Centre, were aware of the best policies, practices, and procedures necessary to fight human trafficking and despite their part in formulating, assessing, and promoting the best policies, practices, and procedures together, they failed to implement them by, among other acts, omissions, and commissions described in this Complaint:

        i. Reducing the costs of training employees and managers on how to spot the signs of human trafficking;

**COMPLAINT AND DEMAND FOR JURY TRIAL**

ii. Failing to refuse room rentals or report guests to law enforcement, and

iii. Lowering a number of security costs and measures that could have combatted sexual trafficking and exploitation.

141.    To date, G6, Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center, and Hilton d/b/a Hilton Dallas Lincoln Centre, have failed to train all of their employees and/or agents to look for signs of trafficking.

142.    The failure to implement the best policies, practices, and procedures was not an oversight by G6, Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center, and Hilton d/b/a Hilton Dallas Lincoln Centre.

**C. Defendants Knew Or Should Have Known Ventures Were Operating Out Of Their Hotels**

143.    Due to G6, Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center, and Hilton d/b/a Hilton Dallas Lincoln Centre's failures to enact anti-trafficking policies and procedures to comply with the TVPRA, these Defendants, in essence, turned a blind eye to human trafficking. Therefore, these Defendants' failure to investigate and monitor human trafficking is sufficient to establish Defendants knew or should have known of human trafficking for commercial sex occurring at their brand properties, including the locations where Plaintiff was trafficked.

144.    G6, Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center, and Hilton d/b/a Hilton Dallas Lincoln Centre, knew, or should have known, that sex trafficking victims were being trafficked because they constantly entertained foot traffic at the rented room to appease the traffickers' daily quotas, the traffickers would help check her in then not proceed to the room, and the victim often displayed visible injury while seemingly never allowed to be alone. These behaviors indicated that sex traffickers were using the Defendants' hotels for a venture.

145.    As a direct and proximate result of these egregious practices on the part of G6, Motel 6 d/b/a Motel 6 Dallas, Tx - Market Center, and Hilton d/b/a Hilton Dallas Lincoln Centre, T.C. and victims of sex trafficking and exploitation like her, have been permanently injured and damaged physically, emotionally, psychologically, and financially.

**FIRST CAUSE OF ACTION**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**18 U. S. C. § 1595 ("TVPRA")**

**(Against All Defendants)**

146.    Plaintiff incorporates each foregoing allegation as if fully stated herein.

147.    Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591(a) and is therefore entitled to bring a civil action under 18 U.S.C. § 1595.

148.    Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. § 1595. Specifically, Defendants had a statutory obligation not to benefit from a venture which they knew, or should have known, to engage in violations of 18 U.S.C. § 1591(a). At all relevant times, Defendants breached this duty by facilitating human trafficking through their participation in the harboring of Plaintiff, her trafficker, and buyers in their hotels for the purposes of commercial sex induced by force, fraud, or coercion.

149.    Defendants benefited as a result of their acts, omissions, and/or commissions by keeping operating costs low, maintaining the loyalty of traffickers and other individuals fueling the supply and demand of sex trafficking, and limiting mandatory regulations within their businesses. Moreover, Defendants knowingly benefited from Plaintiff's trafficking on each occasion they received payment or royalty fees for renting rooms at Defendants' hotels where Plaintiff, her trafficker, and numerous buyers were harbored. Defendants had actual or constructive knowledge of Plaintiff's trafficking but failed to implement or enforce anti-trafficking measures that would have helped her, and others like her. The actions, omissions, and/or commissions alleged in this pleading were the but-for and proximate cause of Plaintiff's injuries and damages.

150.    Plaintiff has suffered substantial physical and psychological injuries as the result of being trafficked and sexually exploited at the Defendants' hotels in violation of 18 U.S.C. § 1591(a).

**SECOND CAUSE OF ACTION**

**CALIFORNIA CIVIL CODE §52.5**

**(Against All Defendants)**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

151.    Plaintiff incorporates each foregoing allegation as if fully stated herein.

152.    Defendants' actions and omissions violate California Civil Code §52.5, which grants private right of action to victims of human trafficking.

153.    Defendants are civilly liable under California Civil Code §52.5(a) because they:

a.    Participated in, facilitated, or enabled human trafficking by failing to take reasonable measures to prevent it, despite obvious red flags.

b.    Knowingly benefited, financially or otherwise, from human trafficking, profiting from hotel room rentals used for T.C.'s commercial sexual exploitation.

c.    Failed to take reasonable steps to prevent trafficking activity on their premises, despite having the capacity and resources to do so.

154.    As a direct and proximate result of Defendants' actions and omissions, Plaintiff has suffered and continues to suffer severe physical, emotional, and psychological harm, including but not limited to:

- Physical injuries and medical expenses;
- Severe emotional distress, anxiety and PTSD;
- Loss of dignity, trust, and personal autonomy;
- Economic losses, including loss of income and future earning potential.

155.    Pursuant to California Civil Code §52.5(b), Plaintiff seeks the following relief: compensatory damages for the harm suffered, punitive damages due to the willful and malicious conduct of Defendants, treble damages as permitted under the statute, injunctive relief to prevent future trafficking at Defendants' hotels, and reasonable attorneys' fees and litigation costs pursuant to California Civil Code §52.5(d).

## PRAYER OF RELIEF

WHEREFORE Plaintiff requests the jury selected to hear this case render a verdict in her favor on all counts alleged, and against each and every named Defendant, separately and severally, and that it awards damages to her in an amount which will adequately compensate her for the injuries and damages she sustained due to the Defendants' conduct outlined as follows:

**COMPLAINT AND DEMAND FOR JURY TRIAL**

a. All available compensatory damages for the described losses with respect to each cause of action;

b. Past and future medical expenses, as well as the costs associated with past and future life care;

c. Past and future lost wages and loss of earning capacity;

d. Past and future emotional distress;

e. Consequential and/or special damages.

f. All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

g. Disgorgement of profits obtained through unjust enrichment;

h. Restitution;

i. Punitive damages with respect to each cause of action;

j. Reasonable and recoverable attorneys' fees;

k. Costs of this action; and

l. Pre-judgment and all other interest recoverable.

On the basis of the foregoing, Plaintiff also requests a jury be selected to hear this case and render a verdict for Plaintiff, and against Defendants, and that it awards damages to Plaintiff in an amount which adequately reflects the enormity of Defendants' wrongs, and which will effectively prevent other similarly caused acts. Further, Plaintiff requests that the Court enter judgment consistent with the jury's verdict and prays for any other damages and equitable relief the Court or jury deem appropriate under the circumstances.

Dated: February 6, 2025                    **DAGHER LAW**


By: _____
        Nicholas Dagher, Esq.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: February 6, 2025                    **DAGHER LAW**

By: _____
                    Nicholas Dagher, Esq.

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California
County of Sacramento
02/06/2025
By: _____ Deputy
    P. Russell

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

G6 Hospitality, LLC; Motel 6, Inc. d/b/a Motel 6 Dallas, Tx– Market Center; Hilton Worldwide; Hilton Domestic Operating Company, Inc.; Hilton Dallas Lincon Centre; and DOES 1 through 200, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JANE T.C. DOE, an individual,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

  You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

  There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

  *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

  *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Sacramento ~~Hall of Justice~~
~~813 6th Street, Sacramento, CA 95814~~
720 9TH STREET
SACRAMENTO, CA 95814
HALL OF JUSTICE

CASE NUMBER: *(Número del Caso):*

25CV003059

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Nicholas Dagher, Esq., DAGHER LAW, 147 Waverly Drive, Pasadena, CA 91105, (626) 415-4422

DATE: 02/06/2025                     Clerk, by  /s/ P. Russell                  , Deputy
*(Fecha)*                            *(Secretario)*                              *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served


[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of (specify):

   under: ☐ CCP 416.10 (corporation)           ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Nicholas Dagher Esq. [SBN 275776]<br>DAGHER LAW; 147 Waverly Drive, PMB #444, Pasadena, CA 91106<br><br>TELEPHONE NO.: (626) 415-4409          FAX NO. : (626) 507-2305<br>EMAIL ADDRESS:  michelle@iarusso.legal; office@iarusso.legal<br>ATTORNEY FOR *(Name):*  Plaintiff, JANE T.C. DOE | *FOR COURT USE ONLY*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Sacramento<br>02/06/2025<br>By: _____ Deputy<br>         P. Russell |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SACRAMENTO**
 STREET ADDRESS: 813 6th Street
 MAILING ADDRESS: 813 6th Street
 CITY AND ZIP CODE: Sacramento, CA 95814
 BRANCH NAME: Sacramento Superior Court - Hall of Justice

CASE NAME:
 JANE T.C. DOE v. G6 Hospitality, LLC., Et Al.

| **CIVIL CASE COVER SHEET**<br>[x] **Unlimited**        [ ] **Limited**<br>(Amount              (Amount<br>demanded            demanded is<br>exceeds $35,000)   $35,000 or less) | **Complex Case Designation**<br>[ ] Counter    [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER:<br>25CV003059<br>JUDGE:<br>DEPT.: |
|---|---|---|

*Items 1–6 below must be completed (see instructions on page 2).*

1.  Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation**<br>**(Cal. Rules of Court, rules 3.400–3.403)** |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property**<br>**Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Insurance coverage claims arising from the<br>above listed provisionally complex case<br>types (41) |
| [x] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse<br>condemnation (14) | **Enforcement of Judgment** |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | [ ] Enforcement of judgment (20) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Miscellaneous Civil Complaint** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] RICO (27) |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Fraud (16) | [ ] Residential (32) | **Miscellaneous Civil Petition** |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Partnership and corporate governance (21) |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Other petition *(not specified above)* (43) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2.  This case [ ] is  [x] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel
         issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more
         courts in other counties, states, or countries, or in a federal
         court
   f. [ ] Substantial postjudgment judicial supervision

3.  Remedies sought *(check all that apply):* a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4.  Number of causes of action *(specify):* Two (2)
5.  This case [ ] is  [x] is not   a class action suit.
6.  If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: 02/06/2025

Nicholas Dagher, Esq.
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to
  the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                    **CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
 Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
 Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
 Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
   Wrongful Death
 Product Liability *(not asbestos or toxic/environmental)* (24)
 Medical Malpractice (45)
  Medical Malpractice–
   Physicians & Surgeons
  Other Professional Health Care
   Malpractice
 Other PI/PD/WD (23)
  Premises Liability (e.g., slip
   and fall)
  Intentional Bodily Injury/PD/WD
   (e.g., assault, vandalism)
  Intentional Infliction of
   Emotional Distress
  Negligent Infliction of
   Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
 Business Tort/Unfair Business
  Practice (07)
 Civil Rights (e.g., discrimination,
  false arrest) *(not civil harassment)* (08)
 Defamation (e.g., slander, libel) (13)
 Fraud (16)
 Intellectual Property (19)
 Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
   *(not medical or legal)*
 Other Non-PI/PD/WD Tort (35)

**Employment**
 Wrongful Termination (36)
 Other Employment (15)

**Contract**
 Breach of Contract/Warranty (06)
  Breach of Rental/Lease
   Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller
   Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
   Warranty
  Other Breach of Contract/Warranty
 Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
 Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
 Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
 Eminent Domain/Inverse
  Condemnation (14)
 Wrongful Eviction (33)
 Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
 Commercial (31)
 Residential (32)
 Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
 Asset Forfeiture (05)
 Petition Re: Arbitration Award (11)
 Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
   Case Matter
  Writ–Other Limited Court Case Review
 Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner
   Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
 Antitrust/Trade Regulation (03)
 Construction Defect (10)
 Claims Involving Mass Tort (40)
 Securities Litigation (28)
 Environmental/Toxic Tort (30)
 Insurance Coverage Claims
  *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
 Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
 Confession of Judgment *(non-domestic relations)*
 Sister State Judgment
 Administrative Agency Award
  *(not unpaid taxes)*
 Petition/Certification of Entry of
  Judgment on Unpaid Taxes
 Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
 RICO (27)
 Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint
   Case *(non-tort/non-complex)*
  Other Civil Complaint
   *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
 Partnership and Corporate
  Governance (21)
 Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SACRAMENTO | Court Use Only |
|---|---|
| COURTHOUSE ADDRESS:<br>Gordon D. Schaber Superior Court<br>720 9th Street, Sacramento, CA 95814 | |
| PLAINTIFF/PETITIONER:<br>Jane T.C. Doe | |
| DEFENDANT/RESPONDENT:<br>G6 Hospitality, LLC. et al | |

| NOTICE OF CASE ASSIGNMENT<br>AND CASE MANAGEMENT CONFERENCE<br>(UNLIMITED CIVIL CASE) | CASE NUMBER:<br>25CV003059 |
|---|---|

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

## NOTICE OF CASE ASSIGNMENT

Pursuant to rule 3.734 of the California Rules of Court, this action is hereby assigned for limited purposes to the judicial officers indicated below:

| PURPOSE | ASSIGNED JUDGE | COURT LOCATION | DEPARTMENT |
|---|---|---|---|
| **LAW & MOTION** | Christopher E. Krueger | Hall of Justice | 54 |
| **CASE MANAGEMENT PROGRAM** | Richard C. Miadich | Gordon D. Schaber Superior Court | 28 |

Please refer to Chapter Two – Parts 3 and 4 of the Sacramento Superior Court Local Rules and the Court's website for additional filing instructions and hearing reservation information.

## NOTICE OF CASE MANAGEMENT CONFERENCE

**Hearing Date**

The above entitled action has been set for a case management conference at **8:30 AM** on **February 27, 2026** in **Department 28** in accordance with California Rules of Court 3.722. You must be familiar with the case and fully prepared to participate effectively in the case management conference.

**Case Management Statement**

All parties must file and serve a case management statement at least 15 calendar days before the case management conference. Parties are encouraged to file a single joint case management statement.

**Minimum Requirements**

Prior to the filing of the case management statement, the parties should have done the following:

- Served all parties named in the complaint within 60 days after the summons has been issued
- Ensured that all defendants and cross-defendants have answered, been dismissed, or had their defaults entered
- Met and conferred with all parties as required by CRC 3.724 to discuss and resolve issues set forth therein.

**NOTICE OF CASE ASSIGNMENT**
**AND CASE MANAGEMENT CONFERENCE**
**(UNLIMITED CIVIL CASE)**

| SHORT TITLE: DOE vs G6 HOSPITALITY, LLC., et al. | CASE NUMBER: 25CV003059 |
|---|---|

## Tentative Ruling

Following its review of the case management statement(s), the court may determine that a case management conference is not necessary. To determine whether an appearance is required, the parties must check the court's tentative rulings after 2:00 p.m. on the Court day before the Friday calendar by accessing the court's internet website at www.saccourt.ca.gov

## Remote Appearances

Unless ordered to appear in person by the court, parties may appear remotely either telephonically or by video conference via the Zoom video/audio conference platform with notice to the court and all other parties in accordance with Code of Civil Procedure 367.75. If appearing remotely, parties are required to participate in their hearing using a device that has video and/or audio capability (i.e. computer, smartphone, or tablet). Although remote participation is not required, the court will presume all parties are appearing remotely for non-evidentiary civil hearings.

## Certification Filed in Lieu of Case Management Statement

If parties in the action file a certification on a form provided by the court at least 15 calendar days prior to the date of the case management conference that the case is short cause (five hours or less of trial time), that the pleading stage is complete and that the case will be ready for trial within 60 days, the case will be exempted from any further case management requirements and will be set for trial within 60-120 days. The certification shall be filed in lieu of a case management statement.

## Case Management Orders

At the case management conference, the court will consider whether the case should be ordered to judicial arbitration or referred to other forms of Alternative Dispute Resolution. Whether or not a case management conference is held, the court will issue a case management order shortly after the scheduled conference date.

## Service of Notice of Case Assignment and Case Management Conference

Unless otherwise ordered by the court, plaintiff shall serve a copy of this notice on any party to the complaint appearing after the court issued this notice. The cross-complainant shall have the same obligation with respect to the cross-complaint.

## Compliance

Failure to comply with this notice or to appear at the case management conference may result in the imposition of sanctions (including dismissal of the case, striking of the answer, or payment of money).

## Continuances

Case management conference(s) will not be continued except on a showing of good cause. If your case management conference is continued on motion or by the court on its own motion all parties shall file and serve a new case management statement at least 15 calendar days before the continued case management conference.

Dated: 02/06/2025              By:          /s/ P. Russell

                                                    P. Russell, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT**
**AND CASE MANAGEMENT CONFERENCE**
**(UNLIMITED CIVIL CASE)**

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| Nicholas Dagher, Esq. (SBN 275776)<br>DAGHER LAW 147 Waverly Drive Pasadena, CA 91105 (626) 415-4422<br> Email: dagher@nd-lawyers.com; sam@nd-lawyers.com<br>Robert Simon, Esq. (SBN 238095) Brad M. Simon, Esq. (SBN 244369) TeamIE@JusticeTeam.com<br>THE SIMON LAW GROUP, LLP<br>34 Hermosa Avenue Hermosa Beach, CA 90254<br>　　　TELEPHONE NO:　855-910-1344　　　　　FAX NO *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>　　ATTORNEY FOR *(Name)*:　plaintiff | **ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Sacramento<br>08/07/2025<br>M. Pipe<br>By: _____ Deputy |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**　Sacramento
　STREET ADDRESS:　720 9th Strret
　MAILING ADDRESS:
　CITY AND ZIP CODE:　Sacramento , 95814
　BRANCH NAME:　Hall of Justice

| PLAINTIFF / PETITIONER:　JANE T.C. DOE, an individual,<br>DEFENDANT / RESPONDENT:　G6 Hospitality, LLC; Motel 6, Inc. d/b/a Motel 6 Dallas, Tx– Market Center;<br>Hilton Worldwide; Hilton Domestic Operating Company, Inc.; Hilton Dallas<br>Lincon Centre; and DOES 1 through 200, inclusive | CASE NUMBER:<br>25CV003059 |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>13880081 (2025-11193) |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [X] summons
   b. [X] complaint
   c. [ ] Alternative Dispute Resolution (ADR) package
   d. [X] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [X] other *(specify documents)*:　NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE ,
3. a. Party served *(specify name of party as shown on documents served)*:
      G6 Hospitality LLC
   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
      G6 Hospitality LLC c/o Barbara Baine SOP Administrative Specialist, Agent for Service: 1505 Corporation Cogency Global Inc.
4. Address where the party was served:
   1325 J Street Ste 1550, Sacramento, CA 95814
5. I served the party *(check proper box)*
   a. [X] **by personal service**. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*:　Tue, Aug 05 2025　　　　(2) at *(time)*:　12:18 PM
   b. [ ] **by substituted service**. On *(date)*:　　　　　at *(time)*:　　　　　I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:　　　　　from *(city)*:　　　　　or [ ] a declaration of mailing is attached.
      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Page 1 of 2<br>Code of Civil Procedure, § 417.10 |
|---|---|---|

| PLAINTIFF / PETITIONER: JANE T.C. DOE, an individual,<br>DEFENDANT / RESPONDENT: G6 Hospitality, LLC; Motel 6, Inc. d/b/a Motel 6 Dallas, Tx– Market Center;<br>Hilton Worldwide; Hilton Domestic Operating Company, Inc.; Hilton Dallas<br>Lincon Centre; and DOES 1 through 200, inclusive | CASE NUMBER:<br>25CV003059 |
|---|---|

5. c. ☐ **by mail and acknowledgment of receipt of service**. I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date)*:                  (2) from *(city)*:

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section)*:

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.

  b. ☐ as the person sued under the fictitious name of *(specify)*:

  c. ☐ as occupant.

  d. ☒ On behalf of *(specify)*:   G6 Hospitality LLC

    under the following Code of Civil Procedure section:

    ☐ 416.10 (corporation)    ☒ 415.95 (business organization, form unknown)

    ☐ 416.20 (defunct corporation)    ☐ 416.60 (minor)

    ☐ 416.30 (joint stock company/association)    ☐ 416.70 (ward or conservatee)

    ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)

    ☐ 416.50 (public entity)    ☐ 415.46 (occupant)

    ☐ other:

7. **Person who served papers**

  a. Name:           Mariah Gutierrez

  b. Address:        254 N lake Ave Suite 124, PASADENA, CA 91101

  c. Telephone number:    916-477-4299

  d. **The fee** for service was:  89.00

  e. I am:

    (1) ☐ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☒ a registered California process server:

      (i) ☐ owner ☐ employee ☒ independent contractor

      (ii) Registration No:  2025-028 Sacramento

      (iii) County:  Sacramento

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

  or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date:  08/06/2025

Mariah Gutierrez

(NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)          (SIGNATURE)